I'd like to reserve a couple of minutes for rebuttal if necessary. This case is about whether a person can be prosecuted for criminal contempt where the court did not have the power to issue the order that forms the basis for the conviction of the defendant. Why didn't the court have the power to issue the order? Because what the court did, Your Honors, is that under 3582D, it specifically prescribes the very limited circumstances a district court judge or a court can limit the communications of a sentenced prisoner. Mr. Adams was sentenced on a supervised release violation. On the date that he was sentenced, he was now in BOP custody. Under 3582D, it specifically says that a court can limit the communications with specified persons upon a motion by the U.S. attorney or by BOP going to the court and showing by probable cause that specific person should be not contacted by a defendant serving a sentence. In cases where contacting that person would promote a criminal enterprise. We did not have that here. Mr. Adams was not under 3582D. It limits communications of people charged or convicted of Title 21 U.S.C. 801 drug trafficking offenses and also RICO offenses. Mr. Adams' underlying conviction was for felon in possession. Therefore, his communications while he was serving a sentence are controlled and regulated by the Bureau of Prisons. The judge, by issuing this order, issued an illegal order. So that's the first step in the analysis, Your Honors. He had the chance to appeal that? Well, he filed an appeal. He did appeal it, but we don't know what the basis. He withdrew it. After consulting with his attorney, he withdrew the appeal. There's nothing in the record to indicate that that order was the basis of why the notice of appeal was filed. We don't know. He had the opportunity to do that and he didn't, correct? He clearly did. And so why isn't that a waiver? It's not a waiver because he wasn't even, that withdrawal occurred in November 2015. He wasn't indicted on the criminal contempt until May 2016, just before his release on the supervised release violation. It wasn't a knowing and intelligent waiver of a right because he didn't even, there was no evidence in the record suggesting that the U.S. attorney was going to prosecute him for criminal contempt for whatever communications he had in jail. But he knew that the, according to you, that the order, the judge couldn't issue that order. And that was certainly something he knew he could have appealed at that time. That's not in the record, Your Honors. There's nothing in the record. In fact, that's part of the problem here. The order was in the record. I'm sorry. Do we have to know that what he talked to his lawyer about? I mean, that seems, you know, rather curious that we would have to know what he talked to his lawyer about in order for any waiver to be valid. It seems like he filed a declaration in which he stated that he had decided to waive any right to appeal the sentence after consulting with his then attorney. Why isn't that enough? Well, because that doesn't encompass that, the challenge to the order as illegal. And in fact, Your Honors, the reason why, while you're saying that we can't, we shouldn't have to know what were the communications between the attorney and the client, I agree with that. But we shouldn't also be speculating as to what he was waiving at the time. Counsel, let me ask you, could I ask you to go back to your earlier premise that is that the conversations or threats to the former girlfriend are not part of a criminal enterprise? Yes, Your Honor. So let me ask you why. Is it your position that while in prison for assaulting a woman or threatening a woman that it would not be criminal to continue to threaten her by phone? Yes, it could be criminal. In fact, there's a California statute dealing with criminal terrorist threats, Penal Code Section 422. In fact, there is a federal statute that criminalizes interstate communications of threats, and that section is 18 U.S.C. 875. The government could have prosecuted Mr. Adams, either the state, either the DA or the U.S. attorney under 875 could have prosecuted him for that. What our challenge is, what we think was inappropriate here, Your Honor, was that this was the basis of a criminal contempt prosecution. But why couldn't the judge here think that he can be ordered not to communicate with the, is it a former girlfriend or a former spouse? It's a girlfriend. It's the father of his child. They were entertaining at the time, Your Honor. Especially while on supervised release, Adams assaulted, it's undisputed, he assaulted this girlfriend, this same person. And so it was on that basis that his supervised release was revoked. He had issues with following that directive. That's undisputed. He goes into the prison for violating his supervised release on that specific, for that specific reason. And he's told he's not supposed to have contact because he's been violating that rule. And yet he continues, I think he calls her and threatens her over 50 times while he's in custody. Is that correct? That's correct, Your Honor. So I guess I'm trying to understand, and I'm sorry to interrupt Judge Gould, but I wanted to put additional detail on that. Why did the court not have inherent authority to issue the no contact order? Because, Your Honors, that leads to a different question, okay? It's clearly that the order contravened congressional mandate under 3582D because he was a sentenced prisoner. He was not on supervised release. So the order violated the clear reading of the statutes. There's been a carve out under the decisions Wheeler and Sotelo that if it's in the inherent administration of justice or to protect witnesses, then you've been in court. Well, she was a witness. But the court didn't make any specific findings about that, didn't make a finding that she was a witness. Well, she wasn't a witness, Your Honor. She didn't testify in the supervised release violation. Because she didn't show up. She had been the victim of the assault. That's correct, Your Honor. But she wasn't a witness. And secondly, the case was over. It's unlike the case of United States v. Morris where the court did issue and make the particular findings that the court should have made in this case, saying that, well, there's going to be a retrial. The victim is a potential witness.  But the court did issue a particular ruling that said, well, if the defendant is a potential witness, impending the retrial, we're going to issue this order preventing the defendant from communicating from the victim. And the district court here didn't rule on its inherent authority, correct? It relied on the collateral, the collateral bar. Bar rule. That's right. And that's correct. Why shouldn't we affirm on the collateral bar rule here? Well, because, Your Honors, even the district court, if you read the court's order, recognized the problems with said the defense raised non-trivial concerns about the legitimacy of this order. The district court rested on the collateral bar rule. But the collateral bar rule doesn't apply when there's an attack on personal or subject matter jurisdiction. And this is an issue of subject matter jurisdiction, because Congress has carved out that district courts are not supposed to regulate communications of a sentence prisoner. And so because it wasn't addressed by the district court, because it's a matter of subject matter jurisdiction, then it can be subject to the collateral bar. But that takes you back to Wheeler, which suggests that the court has the inherent authority, and that is at least a basis for jurisdiction. Very limited, Your Honors. That was a judicially created rule in Wheeler. And, in fact, in Sotelo, what the court recommends when the court issues that, it came before Sotelo where the defendant did appeal, and Sotelo remanded and told the district court that you should construe your order as a recommendation. And that's another way that this court could harmonize the district court's order by construing it as a recommendation. If it's a recommendation, then Mr. Adams is not in contempt of the court's order. But I guess I'm trying to understand. The basis for your subject matter jurisdiction argument is that the court erred in issuing the no-contact order in this case, which, again, is an argument the collateral bar rule plainly seems to prohibit. And the basis of your subject matter jurisdiction argument is not that the court simply lacked the authority to issue the no-contact order in this case, which would, I guess, fit more squarely within the subject matter jurisdiction exception to collateral bar rule, because you concede that courts have the authority to issue no-contact orders, but just in a very limited circumstance. Is that right? Well, I concede it, Your Honor, because the Ninth Circuit has ruled that way. But that's a judicially created rule that was made in Wheeler to get around the clear subject matter that Congress has dictated to the courts in its laws that the district court is not supposed to regulate communications of sentenced prisoners. So they carved out a very limited situation. I still think I would submit, Your Honor, that it still is a matter of subject matter jurisdiction. And if you don't make the specific findings, if you don't find on the record that it's for the purpose of protecting witnesses or an administration of justice, which the district court basically conceded it didn't, then it does violate the subject matter jurisdiction of Congress to regulate. Counsel, can I ask you a question about that argument? And do I understand that you're saying that in these circumstances where the guy had assaulted the former girlfriend or the mother of his child before, that he had assaulted her while on supervised release, that the court has no jurisdiction to issue a no-contact order, and therefore they just have to let him continue to do this? And then if they want to, they can prosecute him for a bunch of separate crimes? No, no. The district court, he's in Bureau of Prison's custody. The court did, and I would also argue to the court, I do argue that it's really a condition of supervised release and that the order is very ambiguous. And if you read the transcript, if you read the specific written order, it says that he's sentenced to 16 months in prison, and as a condition of supervised release, he cannot contact the victim while he is in prison. So the order is ambiguous on its face. And the district court recognized that. Ambiguous in what sense in that? It's ambiguous because even though the court says you're not supposed to contact her in prison, at the same time she's saying that it's a condition of supervised release. That inherently creates ambiguity on the record. Well, that was in the order, but what always controls is the oral account of what was said, and that was not ambiguous. Well, I would beg to differ with that, Your Honor. If you read my ‑‑ I'm sure you've read my briefs. I've outlined in there several instances where the district court judge says, I can't order it, I'm making a recommendation. Originally when he announced his order, he said it was the no contact rule in prison was a condition of supervised release. Ultimately, he's pretty clear in orally and in writing. I mean, in our case law, I think it's the Foucheng Qua says if it's clear in the oral, then he's bound by what happened in oral. But even if he wasn't clear, it was also in the written order. I would ask the court to look at the written order. It's in the excerpts of record. Let me just hold on one second, Your Honor. It's ER 50-51. Well, your point is it comes under the provisions of where he's talking about supervised release. But anyone reading that understands that when you're in prison, you're not on supervised release. So it was just misplaced in the order, correct? Well, I would say that the order is pretty clear. He made a condition of supervised release. If someone's reading that, they could reasonably conclude, I'm not on supervised release. I'm in prison. This does not bind me so I can continue with communications. Not that he can continue. It does violate the law, as I've said in other respects, Your Honor. You're correct. But as far as we're talking about here, he got sentenced to 20 months for criminal contempt. Under criminal contempt, there is no statutory maximum. If someone in criminal contempt commits a crime, under Broussard, it's guided by the sentencing guidelines. A person who violates criminal contempt with no statutory maximum can face a life sentence. And so this is very serious. If we're going to hold people responsible for criminal contempt, then I would say at the least the court should be very clear in its orders. And it shouldn't be on the defendant to define exactly what the district court meant. The district court should just be clear. And it just didn't occur here, Your Honor. So you think the defendant thought that it was okay to make these phone calls from prison and it didn't violate an order of the judge? No, Your Honor. We don't make that argument, Your Honor. But we have to look at what's reasonable and objective based on what the court did order. It's not up for us to put the defendant in responsibility to define what the district court meant. Yes, obviously, common sense dictates that you shouldn't be threatening any person. And it subjects them to a whole plenipotentiary of other criminal violations. And I would just say one other thing on the waiver, Your Honor, because you did raise that. I was doing research yesterday. There's a case, United States v. Brim, 302 Fed APPX 588. And in that case, he appealed the supervised release violation, and he committed the violation, but then he challenged on appeal that the supervised release condition was illegal. And the court said, We also reject the government's contention that Brim waived the right to appeal the conditions of the supervised release because he waited until after he violated the conditions before he challenged them. Okay, thank you. Thank you, Your Honor. Thank you. And if the court needs that, I could submit in a 28J letter, but I came across it yesterday. Thank you. May it please the Court. Good morning, Your Honors. Buneeth Gukkar on behalf of the United States. Your Honors, this case is about the rule of law. And an integral maxim to that is that judicial orders must be obeyed until and unless they are properly challenged. That did not happen here. What happened here was that the defendant violated a very clear no-contact order, prohibiting him from contacting the victim whom he had assaulted. It seems like you never raised the waiver argument in the district court. So I guess first let me just ask, why have you not forfeited that argument here on appeal? Your Honor, I believe that the waiver argument collapses with the collateral bar rule in this respect. The government did argue at the district court that the defendant's contentions about the district court's, what the defendant claimed, improperly imposing the no-contact order should have been resolved in that. Well, there's waiver and then there's the collateral bar. Are you saying that's the same thing? I believe functionally in this respect, it reaches the same motions. Because, you know, on appeal, the government did argue here that the defendant made these, because this was not raised in direct appeal. Below, the government's primary contention was raising the collateral bar argument, which in essence relies on a waiver. Sorry, the collateral bar rule emphasizes that defendants waive their rights by not appealing orders properly in the way that the law requires them to do. So with that respect, I wouldn't say that the government is forfeiting that argument because it is in substance what the collateral bar rule seeks to uphold. So why don't you respond to some of Mr. McClain's arguments here today? Yes, Your Honor. So I believe my first response would be that this Court need not even reach the issue as to whether the no-contact order was properly imposed or whether the district court made the appropriate findings. And that is because of the collateral bar rule. If the district court did not make the requisite findings to impose that no-contact order, which the government believes was properly imposed, that was what the defendant should have raised in direct appeal or even in a 2255. But Mr. McClain is saying that the district court didn't have the requisite subject matter jurisdiction for the collateral bar rule to take effect. Can you respond to that? Yes, and that would be the second response. I think based on reading the law of criminal contempt and the collateral bar rule, there is a significant distinction between jurisdiction and power. And I think that the defense is using these two words interchangeably. The collateral bar rule has only three exceptions to overcome that that have been recognized across all courts. This court hasn't even recognized all three. But under the jurisdictional exception, the defendant must show that the court didn't have subject matter jurisdiction or personal jurisdiction over the controversy, not necessarily the power to make a certain order. The way that courts analyze that is whether the district court had subject matter jurisdiction to have the case at which the order emanated. And here, the district court had subject matter jurisdiction. There was a criminal case, and the defendant was supervised by this court on supervised release. So the district court had subject matter jurisdiction. The defendant cannot take an order and say that the order, because it purportedly was unauthorized or the district court didn't have power to impose that order, and convert that into a subject matter jurisdictional defect. The defendant has provided no case that conflates those two concepts. And in fact, the government has pointed to a case where this distinction is very clear, and that is in Raynovac. That is from a different circuit, but in that case, the district court had ordered a non-party to participate in this, I believe it was the insurer, to participate in a settlement conference. The circuit court in Raynovac, in analyzing whether the jurisdictional exception was met, looked to see whether there was subject matter jurisdiction over that case. And in that case, the circuit court eventually did hold that the district court didn't have the power to order a non-party to participate in a settlement conference. But that still was not enough to overcome the collateral bar. And in fact, even in holding that the district court didn't have that power, thereby making that order invalid, the circuit court nevertheless upheld the criminal contempt, because that alludes to a more fundamental maxim. The invalidity of an order is not a defense to a criminal contempt charge. And that is what the defendant is seeking to argue today, that this order was invalid. But that does not serve as a defense, and it does not allow the defendant to surmount or to overcome the collateral bar rule. This also comes from Supreme Court, and that's the United Mine Workers case. Even then, when the Supreme Court had held that the Norris LaGuardia Act didn't apply to the Federal Government, and therefore, arguably, there was an issue of jurisdiction, that was an issue of power, whether the district court could have issued that certain injunction. And even then, the Supreme Court had held, even if the injunction was invalid, the criminal contempt convictions stand. So that would be the government's response to what the defendant argues today, is that a lot of the defendant's arguments, the defendant concedes that the district court had the power to issue this no-contact order. That is real. That is what this court has vested district courts to do, to impose no-contact orders to protect the administration of justice. What was being protected here? The record shows that there are multiple interests that were being protected here. One was to prevent further domestic violence. The second is the record supports, would support that what was being protected was protecting the witness, and that was the victim. And does it have to be tied to a criminal enterprise? Because I think that's what Mr. McClain was arguing. Section 3582, or I'm sorry, the specific statute is not coming to mind. 3582D, I think, isn't it? Yes. That statute is to protect, to prevent further crimes from happening in a criminal enterprise in RICO cases. The government does not contend that that statute applies here. Here, the authority for the district court to impose the no-contact order emanated solely from its inherent authority as encapsulated by Wheeler. The district court never addressed this, correct? On whether it had the inherent authority of, you know, the validity of the order. It rested on the collateral bar rule, didn't it? Yes. So if we don't agree with the collateral bar rule, are that the basis to affirm this? Would we send it back to the district court to decide this inherent authority issue in the first instance? I believe procedurally, no. And that is precisely at the gaps in what the defendant is seeking to do is at the defendant's fault. I see, I'm, oh, I'm sorry. So if this court were to find that the collateral bar didn't apply and could then therefore examine the propriety of that no-contact order, the government first would say that the record supports the propriety of that order. And that the facts that support that would be that the defendant had violated two no-contact orders while on supervised release. And one in the South Dakota State Court where the assault occurred, and then once in interim, no-contact order that the district court had imposed. And so, and based on the calls that were elicited at the hearing, the defendant continued to torment, abuse, torture, and intimidate that victim. And so why not file another, a charge regarding the terrorist threats over the phone or whatever charges you have at the state or federal level? Why go after this person through a criminal contempt proceeding? Your Honor, in one respect, this is what, this is what the defendant did. At some point, this is the different, this is to highlight, and this charge held the defendant accountable for what he did as well. The district court judge acknowledged at the time of the sentencing, I'm going to issue this no-contact order while you're in prison and while you're on supervised release, but he did make a comment. He says, I don't know that I can make the Bureau of Prisons, you know, enforce this, but I'm issuing it anyway. So I guess there's some acknowledgement by the district court that the enforcement was going to be somewhat, you know, lack of certainty with respect to that, especially with respect to the prison being able to enforce it. He knew the prison would not be able to enforce it. So I'm just curious, why proceed on the criminal contempt and not charge a charge? You had one that you could have charged. Well, Your Honor, so to answer both of those inquiries, I see I have about ten seconds if I may continue that. The two inquiries that I hear Your Honor is asking is, one, about the comment made about the enforcement aspect. To that issue, there were two orders made, very distinctly. First, the court ordered the defendant not to contact the victim and then made a recommendation to the Bureau of Prisons to take whatever steps to enforce that, and that is because, as the record shows, leading up to the supervised revocation hearing, the defendant used other inmates' accounts to contact the victim. And so the government made a request in its sentencing briefing to make an order and an independent recommendation because the court, of course, can't direct how a Bureau of Prisons uses whatever mechanisms to prevent an inmate, whether it be how they use the phone, how they access accounts. So that explains that aspect. The second aspect is why this criminal contempt charge. That is the government's responsibility in deciding which charges to bring. I would represent to the court that the criminal contempt charges here best covered, in one respect, what the defendant was doing forthright, and that was violating that direct court order, which was particularly egregious after having violated that same district court's order pending the revocation proceedings and another court's order to not contact that same victim while in state custody. Before you conclude, I just have one other question. So it seems like Mr. Palmer is asserting two arguments here on appeal. One, it appears that he's challenging the validity of the order that was not valid or that the district court didn't have the authority to do this. But then he's also challenging it that it was ambiguous, and so I guess sort of challenging because of the confusing nature of it, that it was improper or shouldn't be enforced. What's your response to the second? We've been spending a lot of time with you on the first. What's your response to the second? So with respect to the lack of the clarity of the order, Your Honor, the government agrees with the comments made by the panel, and first, that the order was clear. And the district court that made the order, which is the district court below, which this court, although is employing a de novo review, does give some persuasive deference to that district court, reviewed the transcript, reviewed the order, and noted that it was clear on the defendant that he was not to contact that victim while in custody. And as was pointed out by the panel earlier, that was clear in the oral transcript, which controls, and even to the extent there was any ambiguity, which there wasn't, the written order is simply clear as well. By referencing the fact that no contact order applied while in custody, by definition, does not mean supervised release. But to the larger point there, this argument could equally have been pursued on appeal, and it could also have been pursued on a 2255 if that was appropriate. And even to this date, no motion in that matter under 2255 had ever been made. Defense counsel in the district court below conceded that if he was the attorney, he would have appealed it. And so therefore, that possibility existed then, it existed on 2255, and it was never pursued. Thank you. Judge Gould, do you have any other questions? No questions here.  Okay. Thank you. Thank you, Your Honors. I'll give you a minute. I let you go over seven minutes earlier, so I'll give you a minute. I know. I appreciate it, Your Honors. Just real briefly, I did cite to a case, the Brim case. I could submit it as a Rule 28J letter. I think it's analogous where a defendant violated supervised release, and then the court said, well, even though you violated, you can still challenge the validity of the regulation, even though you violated first, which I think is directly the situation here. Secondly, I would say this order was clear as mud, and I would just ask Your Honors to read the transcript of the supervised release violation hearing. Even the district court, in its written order on the motion to dismiss, said, Defendant's counsel raises non-trivial concerns about the procedural propriety of the issuance of the order. The district court never ruled whether it was a proper order or not. It went directly to the collateral bar doctrine and upheld its order and said we couldn't challenge it based on the collateral bar doctrine. So I would say even the district court knew that the order was very problematic. If we're going to subject someone to a criminal contempt prosecution, the district court order should be very clear. The third thing I would say is that there's a real debate and confusion as to what the collateral bar rule means and what it says. All I would say to you is this. The BOP controls how prisoners are treated and supervised in prison. The courts regulate pre-sentence because they're in martial custody and they can issue orders concerning conditions there. And I would say that is the definition of what subject matter jurisdiction is and, therefore, it can be attacked collaterally. Thank you, Your Honors. Thank you both very much for your oral argument presentations here today. The United States of America v. Peyton, Jamar, Adams cases.
judges: Gould, Murguia, Amon